# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00545-CR

**Antonio Vasquez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-11-202153, THE HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Antonio Vasquez of delivery of a controlled substance, cocaine, in an amount of less than one gram. *See* Health & Safety Code Ann. § 481.112 (West 2010). The jury found the allegations in the enhancement paragraphs of the indictment to be true and assessed his punishment at confinement for 11 years in the Institutional Division of the Texas Department of Criminal justice. *See* Tex. Penal Code Ann. § 12.425 (West Supp. 2012). In a single point of error on appeal, appellant asserts that the trial court erred in overruling his objection to the State's jury argument during the guilt-innocence phase of trial. We affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on April 21, 2011, Officer George Blanch of the Austin Police Department was working undercover in southeast Travis County in a buy/bust operation. In

such an operation, an undercover police officer attempts to buy drugs from people who are easy to access while other officers, monitoring and observing what is happening with the undercover officer through a wire, wait nearby to perform an arrest after a successful transaction. Blanch's role in the operation that night was to buy drugs from street level dealers.

At approximately 8:30 in the evening, while driving his undercover vehicle, a pick-up truck equipped with a camera and microphone,[1] Blanch approached appellant who was walking with a younger male and female. Blanch asked them if they could help him get some "hard," a street term for crack cocaine. The younger male and female said no and walked away. Appellant, however, agreed to help Blanch. Blanch asked for $40 worth of crack cocaine and offered appellant $10 for getting it. Appellant said that his connection was in the nearby apartments and that he would go get it. Blanch kept appellant's keys, so appellant would not leave with the money and not return. Blanch pulled over to the side of the road and waited for the appellant to return.

When appellant returned, he told Blanch that his connection was not available but that he was going to be contacted shortly when the narcotics were available. Appellant and Blanch sat in the truck and chatted while they waited. Blanch told appellant he was having trouble finding narcotics where he lived. Appellant offered to sell him drugs in the future. Blanch also told appellant he was having some financial problems. Appellant gave him advice about how to make more money. During the conversation, appellant and Blanch exchanged phone numbers.

---

[1] A DVD containing an audio and video recording of Blanch's encounter with appellant was admitted and played for the jury.

2

A short time later, the female that appellant had been walking with earlier yelled several times from the parking lot. Appellant walked away from Blanch's truck, talked to two people at a nearby apartment complex, and then returned to the truck. Appellant handed the cocaine to Blanch in the undercover vehicle. Blanch then gave the predetermined takedown signal to his tactical support team who came and arrested appellant. The controlled substance was recovered after the arrest. Subsequent lab testing revealed that the substance was .33 gram of cocaine.

The jury found appellant guilty of delivery of a controlled substance as charged in the indictment. After hearing evidence of appellant's prior criminal history, the jury found all four enhancement paragraphs of the indictment to be true and assessed his punishment at 11 years' imprisonment. This appeal followed.

## DISCUSSION

During closing argument of the guilt-innocence phase, the prosecutor made the following argument:

> We don't blame drug addicts, drug users. We don't blame the defendant [sic] for their choice to use drugs. So why are we going to blame the users for this defendant's choice to deliver, regardless of the small amount? This defendant is preying on vulnerabilities of persons with real issues for a quick buck.

Appellant's counsel objected that this argument was "an improper jury argument." The trial judge responded, "A lawyer can make -- overruled -- reasonable deductions from the evidence." In a single issue, appellant complains that the prosecutor's argument, accusing him of "preying upon

3

vulnerabilities of persons with real issues for a quick buck," was "not supported by the record or a reasonable inference from the evidence." We disagree.

Proper jury argument generally falls within one of four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to opposing counsel's argument; and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Even aggressive argument is permissible if it falls within one of these four categories. *See Berry v. State*, 233 S.W.3d 847, 860 (Tex. Crim. App. 2007). Counsel is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); *see also Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997) (State has wide latitude in drawing inferences from evidence, as long as inferences are reasonable and offered in good faith). To determine whether there has been an improper jury argument, we consider the context in which the remark was made. *Gaddis*, 753 S.W.2d at 398.

We construe the prosecutor's argument here as both a reasonable deduction from the evidence as well as a response to opposing counsel's argument. First, the record reflects that in his undercover role, while they were waiting for appellant's source to contact him, Officer Blanch talked to appellant about the difficulty obtaining cocaine in his own neighborhood and his financial problems.[2] In fact, the record reflects that appellant advised Blanch about ways he could earn more

---

[2] Officer Blanch testified that in his undercover role he was pretending to be someone he was not, playing a kind of character.

4

money.  It was a reasonable deduction from this evidence that the person Blanch portrayed was a person who was vulnerable and had "real issues," such as drug addiction, low income, or both.  The evidence also showed that appellant made $10 simply for obtaining the cocaine for Blanch.  It was a reasonable deduction from this evidence that appellant engaged in the drug delivery for "a quick buck."

Further, during his closing argument, appellant's counsel attempted to minimize the serious nature of this delivery offense by remarking that although appellant had sold crack cocaine, he had not sold it in large quantities, nor had he sold it to children.  Appellant's counsel asked the jury to consider whether, because of these facts, this case "fit[s] what you think should be a crime in the State of Texas."  In response, the State noted the appellant was selling cocaine, which is a crime in Texas, regardless of the amount or to whom it is sold.  The State was entitled to respond to counsel's argument by explaining why appellant's criminal conduct was serious and why he should be held accountable.  The prosecutor did so by making a reasonable deduction from the evidence and drawing upon common knowledge—that drugs are frequently sold to those with a drug addiction.

We conclude that the State's argument was both a reasonable deduction from the evidence as well as a response to opposing counsel's argument.  Thus, the trial court did not err in overruling appellant's objection.  Accordingly, we overrule appellant's single point of error.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   August 29, 2012

Do Not Publish